Merrill C. **BECK**, Ronda S. Beck, Donald C. Beck, and Joanne Beck, Appellees,

v.

**EQUINE ESTATES DEVELOPMENT CO.,** Robert H. Lapsley, and Peggy Ann Lapsley, and R.L. Lapsley, Appellants.

No. 94–0085.

Court of Appeals of Iowa.

June 27, 1995.

---

John P. Dollar of Bowers, Wilson, Dollar & Kruse, Des Moines, for appellants.

Stephen A. Hall of Hall & Schlenker, Indianola, for appellees.

Heard by DONIELSON, C.J., HUITINK, J., and SCHLEGEL, Senior Judge.*

HUITINK, Judge.

Defendants, Equine Estates Development Co. (Equine) and Robert, Peggy and R.L. Lapsley appeal a district court order holding them liable for damages for breach of a real estate contract. We affirm in part and reverse in part.

This case arises from a series of installment sale real estate contracts. Jack Davis sold a tract of land to David and Doris Rosenberger on contract. Rosenbergers sold a part of the tract to Equine, which simultaneously sold a smaller part to Merrill, Ronda, Donald and Joanne Beck (Becks), all on contract.

Equine was an Iowa corporation formed to develop real estate. Robert and Peggy Lapsley were the sole officers, directors, and shareholders. Equine had financial problems beginning in 1984, and Robert's father, R.L., loaned sizable sums of money to Robert and Peggy. In 1986 Equine assigned its property interests, including the property sold to Becks, to R.L. Becks, unaware of the assignment, continued to make payments to Equine which were passed on to Rosenbergers.

In 1988 Becks heard Rosenbergers had financial problems. Becks notified Equine they wished to pay off the contract and re-

* Senior Judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

ceive a deed. The tender was ignored, and when it became clear Equine was unable to perform on the contract, Becks stopped payments under the contract.

Rosenbergers had not paid Davis for some time, and in 1989 Davis began forfeiture proceedings. Forfeiture was completed in April 1990. At that time Equine became assetless, did not file its annual report, and was administratively dissolved in late 1990. However, in early 1991 Equine accepted a purported reconveyance of the Rosenberger and Beck property from R.L.

In June 1991 Becks filed an action against Equine and Robert and Peggy Lapsley for recovery of the $97,426.51 they had paid on the contract. In 1993 they amended the petition to include R.L. as a defendant.

The district court found Equine breached its contract of sale when it was unable to deliver a deed upon proper request by Becks. The court also determined Robert and Peggy were personally liable for damages because they used Equine to promote illegality when they accepted the reconveyance from R.L. in an attempt to transfer any liability from him to Equine, a defunct entity.

The court further found R.L. was obligated to perform on the contract by virtue of the assignment. Finally, the court found the reconveyance by R.L. to Equine a nullity. The district court awarded Becks $93,153 in damages with ten percent interest from the date of filing.

Our review in equity actions is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, especially when considering the witnesses' credibility, but we are not bound by them. Iowa R.App.P. 14(f)(7).

■ Robert and Peggy contend the district court erred when it found them personally liable for the Becks' damages. We agree.

■ Shareholders of a corporation are not personally liable for corporate obligations unless the corporation's articles of incorporation otherwise provide. Iowa Code § 490.622 (1993). A corporation's existence may, however, be disregarded if:

(1) the corporation is undercapitalized, (2) it is without separate books, (3) its finances are not kept separate from individual finances, (4) individual obligations are paid by the corporation, (5) the corporation is used to promote fraud or illegality, (6) corporate formalities are not followed, or (7) the corporation is merely a sham.

*Adam v. Mt. Pleasant Bank and Trust,* 355 N.W.2d 868, 872 (Iowa 1984). Continued corporate activity by shareholders following administrative dissolution may also result in personal liability. *Id.* at 873–74.

We, based on our de novo review, have not found sufficient evidence to justify piercing Equine's corporate veil. There is no evidence showing Equine was continually undercapitalized. Its misfortune was inseparably linked to Rosenbergers' financial collapse. Each of its transactions with the Becks occurred while Equine was in good corporate standing, and nothing in the record suggests Equine was merely a sham.

The district court reached a contrary conclusion based on its determination that Equine's attempted acceptance of a reconveyance of the Beck contract was illegal. This transaction was declared a nullity and without consequence to R.L.'s liability to the Becks. Although Robert Lapsley's attempted use of Equine's corporate structure exposed its shareholders to personal liability, we do not believe personal liability results because the transaction was nullified. The effect of nullifying the reconveyance was to leave the Becks in the same position as they were before the attempted reconveyance. The district court erred when it reached the opposite conclusion, and we reverse on this issue.

■ Lapsleys next contend the district court erred in finding R.L. Lapsley liable to Becks. Lapsleys contend the assignments from Equine to R.L. were for security purposes only, therefore R.L. is not liable for Becks damages. We disagree.

■ Although Becks rely on a third party beneficiary theory, we believe the Restatement (Second) of Contracts section 328 provides the rule for interpreting assignments of this nature:

(1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and 'delegation of his unperformed duties under the contract.

In August 1986 Equine signed and delivered four documents to R.L., each entitled "Conveyance of Interest." The document conveying Equine's interests in the property in question provided, in part:

> For good and valuable consideration, ..., Equine Estates Development Co., ..., does hereby quit claim, sell, assign and transfer all of its right, title and interest [in the real estate contract] ... to R.L. Lapsley, 1045 East 6th, Winner, South Dakota, *who by his acceptance of this Conveyance and Assignment agrees to perform all of the obligations of Equine Estates Development Co.*, pursuant to [said] Real Estate Contract.

The contract language does *not* support Lapsleys' claims that the assignments were for security purposes only. The language used is the same as contemplated by section 328.

In addition, the parties never treated the assignments as security interests. R.L. acted as owner to several of the properties assigned him by Equine. R.L. sold two properties to other parties on installment contracts. He also forfeited a sales contract for nonpayment. Finally, R.L. rescinded contracts and refunded money to the buyers when he could not perform under the contracts.

We, like the trial court, find R.L. was obligated to perform Equine's contractual obligations by virtue of the above assignment. The language of the contract and the actions of the parties support this finding. Accordingly, R.L. Lapsley is liable to Becks for the amount of $93,153 together with interest. The district court is affirmed on this issue.

The decision of the district court is affirmed in part and reversed in part. Costs of this action are assessed to defendants.

AFFIRMED IN PART AND REVERSED IN PART.

HAYDEN, J., takes no part.