Luke GODAR, Appellant,

v.

Gerald EDWARDS, a/k/a Jerry Edwards Defendant,

and

Marion Independent School District, Appellee.

No. 96–2032.

Supreme Court of Iowa.

Jan. 21, 1999.

Linda Hansen Robbins of Irvine & Robbins, L.L.P., Cedar Rapids, for appellant.

Matthew G. Novak and Stephanie L. Hinz of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL and TERNUS, JJ.

McGIVERIN, Chief Justice.

Plaintiff Luke Godar appeals a decision of the district court granting defendant Marion Independent School District's (school district) motion for a directed verdict. The district court held that Godar failed to present sufficient evidence to create a jury question concerning his claims against the school district for negligence based on allegations that he was sexually abused by defendant Gerald Edwards, a former school district employee.

Upon our review, we conclude that the district court properly sustained the school district's motion for directed verdict. We affirm that ruling and judgment in favor of the school district. We remand for further proceedings as to defendant Edwards.

### I. Background facts and proceedings.

Plaintiff Luke Godar filed an action naming as defendants, the school district and Gerald Edwards, seeking damages for sexual abuse allegedly perpetrated upon him by Edwards who was curriculum director for the school district.[1] The petition alleged that Edwards sexually abused plaintiff Godar

---

1. In an amended petition, Godar also named Hawkeye Area Council, Boy Scouts of America and Boy Scouts of America as defendants. These two defendants were subsequently dismissed and are not involved in this appeal.

over the course of several years while Godar was a student and that the abuse occurred both on and off school district property. Godar thus sought damages based on claims of intentional torts by Edwards and negligence by the school district.

The case proceeded to jury trial against the school district and Edwards. At the time of trial, Godar was thirty-seven years old.[2]

Evidence presented at trial showed that defendant Edwards was hired as the curriculum director for the school district in 1968. As curriculum director, Edwards was responsible for various duties, including supervising teaching in classrooms, assisting in selection of textbooks, and holding in-service meetings with staff members. Edwards was also a volunteer and assistant with a local Boy Scouts group.

Plaintiff Luke Godar testified that he was introduced to Edwards through the Boy Scouts and that Edwards often visited his mother at their home.

Godar testified that he remembered Edwards first sexually abusing him at a boy scout camp when he was in elementary school. Godar further testified he remembered being sexually abused by Edwards during his seventh grade year on the premises and parking lots of several school district buildings approximately once a month. According to Godar, the abuse continued into his high school years and occurred both on and off school district property.

Godar testified that he never told his parents about the abuse because his parents considered Edwards a "wonderful person." He stated that he never told an administrator or teacher at school about the abuse. He further explained that he discovered the injury from the alleged sexual abuse in 1991 or 1992 during counseling.

Godar's mother testified that she remembered Edwards coming to the home when Godar was in seventh and eighth grade. She explained that Edwards was a friend of the family and that he helped Luke deal with problems associated with his epilepsy.

Plaintiff Godar's younger brother, Edward, testified that defendant also sexually abused him when he was in junior high and that the abuse occurred at a school in the district. Edward also testified that defendant sexually abused him throughout his seventh grade year both on and off school district property. Edward stated that he did not tell anyone about the abuse until the present lawsuit was filed.

On the third day of trial, Godar's counsel informed the court of newly discovered evidence consisting of information that an individual, Mike Benedict, now thirty-nine years old, had come forward stating that he had been sexually abused by defendant Edwards when he was a student. Although counsel was given the option to call the witness in plaintiff's case in chief, counsel informed the court that she would rest the case and call witness Benedict as a rebuttal witness.

After Godar rested his case in chief, the court heard arguments concerning motions by the school district and defendant Edwards for a directed verdict. The court reserved ruling on the motions.

Thereafter, Dr. Richard Sorensen testified on behalf of defendants. Dr. Sorensen was superintendent of the school district during the time the alleged sexual abuse occurred. He testified that he had no knowledge of any inappropriate conduct or allegations of inappropriate conduct on the part of defendant Edwards. He further explained that he would have immediately investigated any such allegations.

Next, defendant testified in his own defense. He denied that he ever sexually abused plaintiff Godar or his brother Edward, or that he inappropriately touched either of them.

On the sixth day of trial, Godar's counsel moved to reopen his case in chief against both defendants. Counsel informed the court that another individual, John Stuelke, had come forward, stating that he also had been sexually abused by defendant Edwards when Stuelke was a student in the school

---

**2.** Although the school district raised a statute of limitations defense in its answer to plaintiff's petition, the present appeal does not involve an issue concerning a statute of limitations. Additionally, plaintiff asserted no federal law claims against the school district in the trial court.

district. Counsel explained that she was not claiming that any additional evidence would show a school district employee or administrator *had knowledge* of an improper relationship between defendant Edwards and Benedict and Stuelke but argued that the new evidence would go to the "should-have-known-test."

The district court concluded that Godar failed to show good cause to justify reopening his case in chief and overruled the motion.

The court then proceeded to hear arguments concerning the motions for directed verdict by the school district and defendant Edwards.

Thereafter, the court granted the school district's motion for directed verdict as to all counts of Godar's petition. With respect to claims concerning vicarious liability/respondeat superior, the court concluded that defendant Edwards was not acting within the scope of his employment during the course of any alleged sexual abuse and thus the school district was not liable. With respect to Godar's claim against the school district for negligence, the court concluded that Godar failed to show that the school district knew or should have known of defendant Edward's alleged sexual abuse of plaintiff or anyone else, or that the school district was negligent in hiring, supervising, or retaining defendant Edwards.

Thereafter, defendant Edwards moved for a mistrial, which the court granted for reasons unrelated to this appeal.

Plaintiff Godar appeals, asserting that the district court erred in granting the school district's motion for directed verdict and in overruling his motion to reopen his case in chief.

## II. Standard of review.

 The district court sustained defendant school district's motion for directed verdict. Our standard of review concerning appeal from the grant of a motion for directed verdict involves looking for substantial evidence. Thus, where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict. *See Stover v. Lakeland*

*Square Owners Assn.*, 434 N.W.2d 866, 873 (Iowa 1989). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990). In reviewing the district court's decision, we view the evidence as the trial court did in ruling on the motion, that is, in the light most favorable to the party against whom the motion was directed. *Id.*

## III. Did the district court properly sustain defendant's motion for directed verdict concerning plaintiff's claim based on respondeat superior?

Godar first contends the district court wrongly concluded that the school district was not liable for the alleged sexual abuse committed by Edwards under the doctrine of respondeat superior because such conduct was not within the scope of his employment.

### A. Applicable law.

 The well established rule is that under the doctrine of respondeat superior, an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment. *Jones v. Blair*, 387 N.W.2d 349, 355 (Iowa 1986); *Sandman v. Hagan*, 261 Iowa 560, 566, 154 N.W.2d 113, 117 (1967). Thus, "[a] claim of vicarious liability under the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994); *see also Vlotho v. Hardin County*, 509 N.W.2d 350, 354 (Iowa 1993).

 We have said that for an act to be within the scope of employment the conduct complained of "must be of the same general nature as that authorized or incidental to the conduct authorized." *Sandman*, 261 Iowa at 567, 154 N.W.2d at 117. Thus, an act is deemed to be within the scope of one's employment "where such act is necessary to accomplish the purpose of the employment and is intended for such purpose." *Id.* at

566–67, 154 N.W.2d at 117. The question, therefore, is whether the employee's conduct "is so unlike that authorized that it is 'substantially different.'" *Id.* at 567, 154 N.W.2d at 117. Said another way, "a deviation from the employer's business or interest to pursue the employee's own business or interest must be *substantial in nature* to relieve the employer from liability." *Id.* at 568, 154 N.W.2d at 118.

Section 229(2) of the Restatement (Second) of Agency (1957) lists the following factors to be considered in determining whether conduct of an employee may be characterized as occurring within the scope of the employee's employment:

 (a) whether or not the act is one commonly done by such servants;

 (b) the time, place and purpose of the act;

 (c) the previous relations between the master and the servant;

 (d) the extent to which the business of the master is apportioned between different servants;

 (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

 (f) whether or not the master has reason to expect that such an act will be done;

 (g) the similarity in quality of the act done to the act authorized;

 (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

 (i) the extent of departure from the normal method of accomplishing an authorized result; and

 (j) whether or not the act is seriously criminal.

Comment a, concerning subsection (2), explains that the ultimate question in determining whether an employee's conduct falls within the scope of employment is

whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed.

Restatement (Second) of Agency § 229 cmt. a.

"Although the question of whether an act is within the scope of employment is ordinarily a jury question, depending on the surrounding facts and circumstances, the question as to whether the act which departs markedly from the employer's business is still within the scope of employment may well be for the court." *Sandman,* 261 Iowa at 569, 154 N.W.2d at 118 (deciding that question whether employee was acting within scope of employment was properly a question for the court, not jury); *cf. Mary KK v. Jack LL,* 203 A.D.2d 840, 611 N.Y.S.2d 347, 348 (N.Y.App.Div.1994) (noting that "scope of employment" is usually a jury question, but summary judgment is appropriate where there is no conflicting evidence or the facts are undisputed).

### B. Analysis.

Upon our review of the record presented, we agree with the district court's determination that any alleged sexual abuse by Edwards was not an act committed within the scope of his employment for which the school district may be held liable.

First, we believe that it cannot reasonably be said that sexual abuse by Edwards is "of the same general nature" as that authorized by the school district in connection with his duties as curriculum director for the school district. Nor can it be said that any inappropriate acts by Edwards were committed in furtherance of his duties as curriculum director. To the contrary, any alleged sexual abuse by Edwards would be a substantial deviation from his duties as curriculum director and "substantially different" in nature from that authorized by the school district. *Cf. Sandman,* 261 Iowa at 569, 154 N.W.2d at 119 (employee's assault on third party was a substantial deviation from his duties; act of hitting plaintiff with shovel was substantially different in nature from duties authorized by employer).

Although Edwards had the opportunity to become acquainted with Godar by virtue of his duties as curriculum director and programs he developed for children with special needs, we believe it cannot be said that the

actions were committed in furtherance of his duties as curriculum director or the objectives of any school district programs. The fact that Edwards' alleged conduct was incidental to duties authorized by the school district as curriculum director does not support a finding that the conduct furthered the educational objectives of the school district. *Cf. Tall v. School Comm'rs.*, 120 Md.App. 236, 706 A.2d 659, 671 (Md.Ct.App.1998) (school district not vicariously liable for teacher's physical abuse of student; teacher's actions in beating student, although arguably incidental to objective of teaching students, were not in furtherance of school board's objectives).

Additionally, the fact that the abuse occurred on school district property does not make the school district automatically liable for abuse by its employee. Nor is it sufficient to show the abuse would not have occurred but for Edwards' employment by the school district. *Cf. Sandman*, 261 Iowa at 568, 154 N.W.2d at 118 (fact that assault by employee occurred at job site while employee was employed at a task for his employer was not sufficient to make employer liable for battery).

There simply was no evidence to show that Edwards' alleged conduct was expected, foreseeable, or sanctioned by the school district. We do not believe that sexual abuse by a teacher is a "normal" risk associated with the objectives of educating students such that it should be a risk that should be borne by the school district.

We conclude that any alleged sexual abuse by Edwards would be conduct so far removed from his authorized duties as curriculum director that the question of whether any alleged sexual abuse by Edwards was within the scope of his employment was properly determined by the court. We further conclude that the district court properly decided as a matter of law that Edwards was acting outside the scope of his employment during any alleged incidents of sexual abuse. *Cf. Mary KK*, 611 N.Y.S.2d at 348 (summary judgment in favor of school district upheld;

school district not liable under respondeat superior for teacher's sexual abuse of plaintiff student); *Medlin v. Bass*, 327 N.C. 587, 398 S.E.2d 460, 464 (N.C.1990) (summary judgment in favor of school district upheld; school district not vicariously liable under doctrine of respondeat superior for principal's sexual abuse of student); *see also* Richard Fossey and Todd A. Demitchell, *"Let the Master Answer"; Holding Schools Vicariously Liable When Employees Sexually Abuse Children*, 25 J.L. & Educ. 575, 586 (1996) (noting that "courts are virtually unanimous in holding that school districts are not liable under agency principles for sexual assaults by school employees").

Thus, the trial court properly granted the school district's motion for directed verdict concerning liability of the school district based on the doctrine of respondeat superior.

## IV. Did the district court properly conclude that the school district was not negligent as a matter of law?

In his petition, Godar asserted claims against the school district based on theories of general negligence, negligent hiring, retention, and supervision. The district court sustained the school district's motion for directed verdict on all theories based on its finding that "plaintiff failed to show any evidence that the [school district] knew or should have known of defendant Edwards' alleged sexual abuse of plaintiff or anyone else." [3] Godar contends this was error.

### A. Applicable law.

To be successful in his claim against the school district for negligence, Godar must first show that the defendant school district owed him a legal duty. *See Burton v. Metropolitan Transit Auth.*, 530 N.W.2d 696, 699 (Iowa 1995). "Duty is a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actors part for the benefit of the injured person." *Id.*

---

**3.** The issue whether the school district is liable based on a theory of negligence is separate and distinct from liability under the doctrine of re-

spondeat superior. *See* 27 Am.Jur.2d *Employment Relationship* § 472, at 912 (1996).

"The law charges school districts with the care and control of children and requires the school district to exercise the same standard of care toward the children that a parent of ordinary prudence would observe in comparable circumstances." *Id.* at 700; *see also Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238, 1243 (Idaho 1986) (noting that board of trustees of school district has statutory duty "[t]o protect the morals and health of the pupils"); *Peck v. Siau,* 65 Wash.App. 285, 827 P.2d 1108, 1112 (Wash. Ct.App.1992) (school district has a duty to protect students from physical hazards in the school building or on school grounds, from the harmful actions of fellow students, a teacher, or other third persons).

The duty of a school district concerning the supervision and safety of students is not unlimited. Rather, the scope of the school district's duty is limited by what risks are reasonably foreseeable. *Marquay v. Eno,* 139 N.H. 708, 662 A.2d 272, 279 (N.H.1995); *Peck,* 827 P.2d at 1112–13. Wrongful activities will only be foreseeable "if the district knew or in the exercise of reasonable care should have known of the risk that resulted in their occurrence." *Peck,* 827 P.2d at 1113. As one court has stated:

[A] defendant will not be held liable for negligence if he could not reasonably foresee that his conduct would result in an injury or if his conduct was reasonable in light of what he could anticipate.

*Marquay,* 662 A.2d at 279 (citations omitted). The Minnesota supreme court made a similar statement in holding that a school district was not liable for a teacher's sexual contact with a student:

A school district cannot be held liable for actions that are not foreseeable when reasonable measures of supervision are employed to insure adequate educational duties are being performed by the teachers, and there is adequate consideration being given for the safety and welfare of all students in the school.

*P.L. v. Aubert,* 545 N.W.2d 666, 668 (Minn. 1996).

With respect to Godar's claim regarding negligent hiring, we have apparently never addressed the validity of a claim against an employer based on negligent hiring. Our court of appeals, however, recognized such a claim when the employer owes a special duty to the injured party. *See D.R.R. v. English Enters., CATV,* 356 N.W.2d 580, 583 (Iowa App.1984).

As noted by the court of appeals in *D.R.R.,* 356 N.W.2d at 583, a party asserting a claim for negligent hiring generally bases the claim upon Restatement (Second) of Agency § 213 (1957). Section 213 provides as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . . .

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

As one authority has explained:

The tort of negligent hiring is based on the principle that a person conducting an activity through employees is subject to liability for harm resulting from conduct in the employment of improper persons involving risk of harm to others.

27 Am.Jur.2d *Employment Relationship* § 473, at 913 (1996).

Thus, in order to recover based on a claim of negligent hiring, a plaintiff must prove the following:

(1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;

(2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and

(3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Id.* at 913–14.

 We now join those jurisdictions that have recognized a claim by an injured third party for negligent hiring and conclude that an employer has a duty to exercise reasonable care in hiring individuals, who, because of their employment, may pose a threat of injury to members of the public. We believe that such a claim likewise includes an action for negligent retention and negligent supervision.

### B. Analysis.

Upon our review of the record presented, we conclude that the district court properly sustained the school district's motion concerning Godar's negligence claims. With respect to Godar's general negligence claim, we first point out that Godar's counsel admitted at oral argument that the evidence showed the school district had no actual knowledge of an inappropriate relationship between plaintiff and Edwards. Thus, Godar's claims of negligence are simply based on the theory that someone "should have known" of the abuse. Godar contends that the facts show that Edwards had access to all schools in the district, had access to children, and that he developed programs for children with special needs; thus, Godar asserts that the school district should have been suspicious that Edwards was abusing students.

 1. We believe that Godar failed to present sufficient evidence to suggest that the school district "should have known" that Edwards was sexually abusing him or that the school district somehow breached a duty of care owed to Godar. The evidence does not show any reason for school district officials to be suspicious of Edwards' interaction with students either on or off school district premises. In fact, the superintendent testified that it was normal for Edwards to be present in the schools and to have interaction with students.

Accordingly, the district court properly granted the school district's motion for directed verdict concerning Godar's claim of negligence in not preventing the alleged sexual abuse by Edwards. *Cf. P.L.*, 545 N.W.2d at 668 (summary judgment in favor of school district upheld concerning plaintiff's claims against school district for negligent hiring and supervision of teacher who had sexual contact with student); *S.M. v. R.B.*, 261 Mont. 522, 862 P.2d 1166, 1170 (Mont.1993) (summary judgment in favor of school district upheld where evidence did not support claim that teacher's aide sexually abused plaintiff student).

 2. With respect to Godar's negligent hiring claim, we believe that the district court properly concluded as a matter of law that the school district was not liable for negligence in hiring defendant Edwards. Godar presented no evidence showing that former superintendent Dr. Sorensen had any knowledge at the time of hiring that defendant Edwards had a past history of inappropriate conduct. Additionally, Godar presented no evidence concerning the type of policies or procedures that the school district follows when hiring new employees, or that the school district failed to follow such policies or procedures when it hired defendant Edwards. Godar thus presented no evidence to create a jury question as to whether the school district was negligent in hiring defendant Edwards and the district court properly sustained the school district's motion for directed verdict concerning this issue. *Cf. Medlin*, 398 S.E.2d at 463 (district court properly granted summary judgment in favor of school district concerning plaintiff's negligent hiring claim relating to principal's sexual abuse of plaintiff student); *Peck*, 827 P.2d at 1110 (summary judgment in favor of school district upheld concerning plaintiff student's claim for negligent hiring of teacher for alleged sexual contact between teacher and student).

 3. We also agree with the district court's decision concerning Godar's claim for negligent retention and supervision. As noted above, Godar concedes that the school district had no actual knowledge of the sexual abuse. Furthermore, we find nothing in the record to support Godar's claim that the school district "should have known" of the abuse. There is no evidence in the record

to suggest that the school district should have been suspicious of Edwards' contact with students. We therefore affirm the judgment of the district court on this issue. *Cf. Mary KK*, 611 N.Y.S.2d at 349 (school district did not breach duty of supervision owed to student, "harm posed by the teacher's proclivities to engage in inappropriate sexual conduct with students was not known or foreseeable at the time [those] incidents occurred"); *Peck*, 827 P.2d at 1113 (school district was not liable for claim of negligent supervision where school district had no reason to know that teacher constituted a risk or danger to students).

In sum, we conclude that Godar failed to present sufficient evidence to create a jury question concerning the school district's liability based on the various theories of negligence. Accordingly, the district court properly sustained the school district's motion for directed verdict on those claims.

Other theories of liability urged by plaintiff either were not presented to the trial court or have no merit.

### V. Ruling regarding plaintiff's motion to reopen his case in chief.

Godar further contends that the district court erred in refusing to allow him to reopen his case in chief to present evidence of two additional witnesses.

■ We recently discussed the district court's authority concerning a motion to reopen the evidentiary case in *Bangs v. Maple Hills*, Ltd., 585 N.W.2d 262, 267 (Iowa 1998). There we noted that "a trial court in its discretion may allow reopening of the case at any stage of the trial, including after argument has commenced if it appears 'necessary to the due administration of justice.'" *Id.* (quoting 75 Am.Jur.2d *Trial* § 390, at 587 (1991)).

■ Based upon the record presented, we believe the district court did not abuse its discretion in overruling Godar's motion to reopen the case. First, the record shows that Godar's counsel had the opportunity to call one of the prospective witnesses in Godar's case in chief, but chose not to do so. Second, Godar's counsel explained that she was not claiming that any additional evidence would show a school employee or administrator knew of the alleged sexual abuse incidents, but rather that the evidence would go to the "should-have-known-test." Thus, it seems that any additional testimony by the proposed witnesses concerning other alleged incidents of abuse would be cumulative to the evidence already in the record.

Additionally, the school district filed its written motion for directed verdict prior to the start of trial although arguments concerning the matter were heard during trial. Thus, Godar was put on notice that he would have to present sufficient evidence to overcome the school district's motion.

We also think it important that both witnesses were discovered during the course of the trial. As a result, defendant school district and defendant Edwards did not have an opportunity prior to trial to depose the witnesses or otherwise prepare their defense case in light of the additional proposed testimony. Based on these facts, we conclude the district court did not abuse its discretion in overruling Godar's motion to reopen the case. We find no error on this issue.

### VI. Disposition.

We conclude that any alleged sexual abuse by defendant Edwards did not occur within the scope of his employment and that the district court therefore properly granted the school district's motion for directed verdict concerning plaintiff's claim based on respondeat superior. We further conclude that the district court properly granted the school district's motion for directed verdict concerning Godar's claims based on negligence. Finally, we conclude that the district court properly exercised its discretion in overruling Godar's motion to reopen the case. We affirm the judgment of the district court as to the school district. We remand for further proceedings concerning defendant Edwards.

**AFFIRMED AND REMANDED.**