**IN THE COURT OF APPEALS OF IOWA**

No. 13-2018
Filed November 26, 2014

**DOUGLAS KING,**
    Plaintiff-Appellant,

**vs.**

**DANIEL WILSON,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Guthrie County, Gregory A. Hulse, Judge.

Plaintiff appeals dismissal of his claims for piercing the corporate veil, fraudulent transfer, and equitable fraud. **AFFIRMED.**

Martha A. Sibbel of Law Office of Martha Sibbel, P.L.C., Carroll, for appellant.

David A. Morse of Rosenberg & Morse, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

Douglas King appeals the district court's grant of Daniel Wilson's motion for directed verdict and dismissal with prejudice of King's claims. We affirm the judgment of the district court.

I.

This suit arises out of a real estate transaction between King and Wilson's corporation, Prairie Pork Farms, Inc. On May 11, 2005, King entered into a contract with Prairie Pork Farms to purchase certain land for $558,000. The contract provided King was to make a down payment of $168,000 with the remainder to be paid in annual installments of $26,000 until paid in full. The contract was signed by King and by Wilson, as registered agent and president of Prairie Pork Farms. King did not obtain any personal guaranty from Wilson.

Prairie Pork Farms had purchased the land from David Garst also on an installment contract. At the time of the sale from Prairie Pork Farms to King, Prairie Pork Farms had not paid all of the installments owed Garst, but it was current on the installment contract with Garst. At the time of the transaction between King and Prairie Pork Farms, King knew that Prairie Pork Farms had purchased the property at issue under an installment contract and that King's title might be at risk if Prairie Pork Farms forfeited the contact with Garst. King testified as follows:

> Q. When you bought this property from Prairie Pork Farms, you knew Prairie Pork Farms was buying the same 230 acres from the Garsts, correct? A. Yes.
> Q. And you knew until such time, if ever, as Prairie Pork Farms paid off that contract, they did not own that 230 acres outright, correct? A. Yes.

At some point in approximately 2008, Prairie Pork Farms defaulted and forfeited its contract with Garst, whose interest was then represented by his widow Marilyn Garst. King desired to continue ownership of the property, and he thus had to and did purchase the land directly from Marilyn Garst. King brought suit against Prairie Pork Farms for damages. By that time, however, Prairie Pork Farms had ceased operations and did not defend the suit. On April 27, 2009, King obtained default judgment against Prairie Pork Farms. King was not able to collect on the judgment against the corporation.

On July 2, 2012, King commenced this suit against Wilson and Prairie Pork Farms. In his amended petition, King asserted three claims: (1) piercing the corporate veil as to Wilson, (2) fraudulent transfer as to both Wilson and Prairie Pork Farms, and (3) equitable fraud as to Wilson. Regarding the first claim, King contended Wilson should be personally liable for the default judgment entered against Prairie Pork Farms in the prior suit. Regarding the second claim, King alleged Prairie Pork Farms' sale of real estate to King constituted a fraudulent conveyance as to King because Prairie Pork Farms was undercapitalized at the time of sale. Regarding the third claim, King alleged Wilson made fraudulent misrepresentations regarding Prairie Pork Farms' ability to provide merchantable title to the real estate at issue. Wilson filed his answer and affirmative defenses, but Prairie Pork Farms failed to answer. The court entered default judgment against the corporation, and the matter proceeded to bench trial on the claims against Wilson. At the close of King's case in chief, Wilson moved for directed verdict as to all counts, which the district court granted.

4

II.

This action was tried to the district court without a jury. Therefore, the motion for directed verdict should have been styled as a motion to dismiss. *See Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 438 (Iowa 1996). "The misnomer is not material, however, because a motion to dismiss during trial is equivalent to a motion for directed verdict." *Id.*

We review the district court's ruling on a motion for directed verdict for corrections of errors at law. *See Pavone v. Kirke*, 801 N.W.2d 477, 486-87 (Iowa 2011). We also conduct substantial evidence review. *See Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999). "Where no substantial evidence exists to support each element of a plaintiff's claim, the court may sustain a motion for directed verdict." *Id.* "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* In reviewing the district court's decision, we view the evidence as the trial court did in ruling on the motion, that is, in the light most favorable to the party against whom the motion was directed." *Id.*

III.

A.

We first address King's claim for piercing the corporate veil. "Central to corporate law is the concept a corporation is an entity separate from its owners. The separate corporate personality ordinarily enables corporate stockholders to limit their personal liability to the extent of their investment." *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 809-10 (Iowa 1978). "But the corporate

device cannot in all cases insulate the owners from personal liability." *Id.* In exceptional circumstances, the corporate veil may be pierced "where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Id.* Relevant factors in determining whether the corporate veil should be pierced include whether "(1) the corporation is undercapitalized, (2) the corporation lacks separate books, (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, or (6) the corporation is a mere sham." *Id.* at 810.

This is not an "exceptional circumstance" in which the corporation was a mere shell serving no legitimate business purpose. Wilson incorporated Prairie Pork Farms in 1994 and operated the business continuously for almost fifteen years. Although Wilson was the sole shareholder and officer at the time of the transaction with King, that, in and of itself, is not evidence of a shell corporation. There was no competent evidence establishing the corporation was continuously undercapitalized or undercapitalized at the time of transfer. *See Beck v. Equine Estates Dev. Co.*, 537 N.W.2d 798, 800 (Iowa Ct. App. 1995) (refusing to pierce corporate veil with no evidence the corporation was "continually undercapitalized" but had instead suffered "misfortune"). King did not establish the corporation materially failed to follow corporate formalities. Wilson met with his corporate attorney every year to address corporate matters. The company regularly filed its required biennial reports. The company filed tax returns separate from

Wilson. The corporation kept separate financial records. The corporation's finances were not commingled with Wilson's personal finances. King points to the payments from Prairie Pork Farms to Wilson Agri, Inc., as evidence of commingling. The evidence showed, however, this was a legitimate transaction with a depository corporation done for the purpose of paying corporate employees. The fact that Wilson's business suffered difficulty post-transaction and ceased operations is not a sufficient reason to pierce the corporate veil.

The cases on which King relies are distinguishable. In *Spectrum Prosthetics and Orthotics v. Baca Corp.*, No. 08-0811, 2009 WL 3337600, at *1 (Iowa Ct. App. Oct. 7, 2009), there was no evidence of any legitimate corporate activity. None of the officers of the corporation could offer proof of any corporate documents, including corporate financial records. *See Spectrum Prosthetics*, 2009 WL 3337600, at *3. Moreover, each of the officers of the corporation testified they had never seen any corporate documents. *See id.* In *C. Mac Chambers Co., Inc. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 598 (Iowa 1987), there was evidence the corporation was never capitalized and the corporate finances were commingled with the shareholder's personal finances. In contrast, in this case, Prairie Pork Farms operated as a legitimate business for almost fifteen years supported by corporate and financial records. The district court did not err in granting directed verdict on this count.

## B.

We next address King's claim for fraudulent transfer. The district court correctly granted Wilson's motion for directed verdict as to King's fraudulent

transfer claim. First, the district court concluded, the action was barred by the statute of limitations. Second, on the merits, the district court concluded the claim had to be dismissed as to Wilson in his personal capacity because the transfer involved Prairie Pork Farms' assets. The district court also concluded that there was no evidence establishing this was a fraudulent transfer.

We conclude dismissal was proper because King's claim is untimely. As relevant here, the Iowa Code provides that claims for fraudulent transfer are extinguished unless suit is brought "within five years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Iowa Code § 684.9(1) (2011). Here, the allegedly fraudulent transfer was Prairie Pork Farms' sale to King in May 2005. King did not file this fraudulent transfer claim until 2012, clearly outside the limitations period. King argues that the one-year discovery rule saves his claim. We disagree. The code provides the claim must be brought within one year after the transfer or obligation could reasonably have been discovered. Here, King was a party to the transaction. He thus had notice of the transfer at the time of the transaction in 2005.

Even if the claim were not time-barred, it fails as a matter of law. King has confused an action for fraud with an action for fraudulent transfer under Iowa Code chapter 684. *See Ford v. Star Bank, N.A.*, No. 97CA39, 1998 WL 553003, at *2 (Ohio Ct. App. Aug. 27, 1998) (stating that fraudulent transfers are not to be confused with transactions involving common-law fraud). Typically, a fraudulent transfer action is asserted by a creditor against a debtor arising out of the

debtor's transfer of property to a third person that interferes with the creditor's ability to satisfy a claim against the debtor. *See* Iowa Code §§ 684.4, 684.5; *Hartford-Carlisle Sav. Bank v. Shivers*, 552 N.W.2d 909, 911 (Iowa Ct. App. 1996) ("A fraudulent conveyance is a transaction by means of which the owner of real or personal property has sought to place land or goods beyond the reach of his creditors or which operates to the prejudice of their legal or equitable rights."). Here, the property transfer at issue was not made with a third party to avoid King's claim. Here, the property transfer at issue was with King. Thus, at the time of the transfer, King was the debtor and Prairie Pork Farms was the creditor. There simply was no transfer of property to a third person to avoid King's claim as a creditor. King really asserts a fraud claim, which we will address below.

Even if the claim were not time-barred and even if chapter 684 applied, the claim still fails. A fraudulent transfer action can be brought by a creditor against a debtor. *See* Iowa Code §§ 684.4, 684.5. Here, the transaction at issue was made by Prairie Pork Farms. King obtained a default judgment against Prairie Pork Farms, but he is not a creditor of Wilson, in Wilson's personal capacity. Because there is no creditor-debtor relationship between King and Wilson, in his personal capacity, King has no fraudulent transfer claim as against Wilson, in his personal capacity. *See Black v. Ali*, No. 184786, 1996 WL 33347935, at *2 (Mich. Ct. App. Dec. 6, 1996) (affirming grant of summary judgment where plaintiff failed to establish she was a creditor of the entity sued); *First Nat'l Bank v. McDonough*, 168 P. 635, 638 (Ariz. 1917) (holding that failure

to establish creditor-debtor relationship necessarily defeats fraudulent conveyance claim).

### C.

Finally, we address King's claim for equitable fraud. To prevail on this claim, King was required to prove the following propositions: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 289 (Iowa 1975). King was required to establish the claim by a preponderance of clear and convincing evidence. *See Morton v. Underwriters Adjusting Co.*, 501 N.W.2d 72, 74 (Iowa Ct. App. 1993). The district court concluded there was no evidence of fraud at the time of the transaction. We agree.

As with his fraudulent conveyance claim, Wilson did not make any representations to King in Wilson's personal capacity. Wilson was acting as the agent and president of the corporation. Thus, the claim against Wilson in his personal capacity fails.

Further, there is no merit to the claim. There was no evidence establishing Wilson made false representations regarding the corporation's assets at the time of the transaction. Further, there is no evidence of reliance. It is undisputed that King knew Prairie Pork Farms was purchasing the land on contract from Garst and that King's interest in the property might be jeopardized if Prairie Pork Farms defaulted on its contract.

IV.

For the foregoing reasons, we conclude the district court did not err in granting Wilson's motion for directed verdict.  The judgment of the district court is affirmed.

**AFFIRMED.**