# IN THE COURT OF APPEALS OF IOWA

No. 24-0570
Filed June 18, 2025

LEONARD BOYD,
      Plaintiff-Appellant,

vs.

CENTRAL IOWA HOSPITAL CORP., d/b/a IOWA METHODIST MEDICAL
CENTER,
      Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


A plaintiff appeals the grant of summary judgment to medical providers.

**AFFIRMED.**


Matthew M. Sahag (argued) of Dickey, Campbell, & Sahag Law Firm, PLC,
Des Moines, for appellant.

Jeffrey R. Kappelman (argued), Jack D. Hilmes, Erik P. Bergeland, and
Peter R. Lapointe of Finley Law Firm, P.C., Des Moines, for appellee.


Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

Leonard Boyd was treated at Iowa Methodist Medical Center (IMMC) for gunshot wounds. Doctors prescribed hydromorphone and other narcotics, but Boyd continued to experience pain. In the same timeframe, pharmacy technician Victor Van Cleave was diluting vials of fentanyl and hydromorphone with sterile water or saline. Boyd's stay at the hospital overlapped with Van Cleave's short employment at the pharmacy before IMMC fired him for diverting pain medications.

Boyd sued IMMC, alleging (1) negligence and (2) negligent hiring, supervision, and retention, as well as seeking punitive damages. The district court granted IMMC's motion for summary judgment. The court found that Boyd's claims required expert testimony, along with a certificate of merit affidavit and an expert witness designation. Because Boyd filed neither, the court dismissed his claims. The court also found Boyd failed to offer proof that he received tampered doses. Or if he did receive tampered doses, that the diluted medication caused his pain. Without evidence that Van Cleave's actions proximately caused Boyd's injuries, the court found IMMC was entitled to judgment as a matter of law.

Boyd challenges the district court's findings, urging us to reverse and remand for trial. But because Boyd did not generate a genuine issue of material fact that the actions of Van Cleave or IMMC caused his injuries, we affirm the grant of summary judgment. By affirming on that ground, we need not address the expert witness issues.

I.      **Facts and Prior Proceedings**

On August 9, 2016, Boyd was shot several times during an attempted robbery in Ames. An ambulance rushed him to IMMC in Des Moines, where he

had exploratory surgery on his stomach to remove some of the bullets. But a bullet remained in his right hip. Boyd also developed an abdominal abscess which required doctors to implant a drainage device to treat the infection.

For the first two weeks of his hospital stay, Boyd felt like his treatment and medication were controlling his pain. On top of the intravenous hydromorphone and dilaudid, Boyd received other pain relievers, including acetaminophen, gabapentin, oxycodone, and benzodiazepines. Boyd said he noticed a change on August 23 when the pain started to increase. The increased pain continued for several days through August 29. After that, Boyd transferred to a rehabilitation unit and continued to struggle "hard" with pain control until he was discharged on September 6.

Meanwhile, Van Cleave—a certified pharmacy technician with no criminal history—started working at the IMMC pharmacy on August 22. Pharmacy employees helped train and supervise Van Cleave, but he soon began working independently. Part of his training involved learning how to access the hospital's tightly controlled narcotics supplies. Within a week or two, Van Cleave could open some of the hospital's narcotics-securing Omnicell machines.[1]

In those first two weeks of his employment, according to Van Cleave's testimony, he began diverting narcotics—primarily dilaudid, fentanyl, and hydromorphone—for his personal use. He would open a machine using his access

---

[1] According to the pharmacy director's affidavit, the handling of controlled substances at the hospital is limited to licensed professionals like Van Cleave. IMMC developed a process to monitor the chain of custody for controlled substances as well as for the training and supervision of pharmacy workers like Van Cleave.

code, remove a narcotic vial from its "pocket" or bin, siphon some medication with a sterile syringe, and refill the vial with sterile water or saline usually stocked at the station using a clean syringe. Opening the vial would sometimes break the tamper tape on top. Then, Van Cleave would enter computer codes called "null transactions" to conceal his actions. The first such notation appeared in IMMC's records on August 25. Van Cleave testified that usually he diverted medication from just one vial at a time. But his highest diversion tally was six vials in a day.

Coworkers began questioning Van Cleave for leaving his assigned posts and eventually raised flags about the "null transactions." Confronted by pharmacy and human resources personnel six weeks into his employment, he confessed to diverting the narcotics. Van Cleave later pleaded guilty to federal criminal charges.

Using its records, IMMC correlated the dates of Van Cleave's null transactions with patients prescribed medication from the Omnicell machines to which he had access. That correlation identified 730 patients. IMMC reached out to those potentially affected patients—sparking this action and a lawsuit involving many more patients being litigated separately.[2]

In January 2021, Boyd sued IMMC, listing counts of (1) negligence; (2) negligent hiring, supervision, and retention; and (3) punitive damages. IMMC answered and raised several affirmative defenses. Eleven months after the answer, IMMC moved to dismiss based on Boyd's failure to file a certificate of merit affidavit, as required under Iowa Code section 147.140 (2021), for all claims requiring expert testimony to establish his prima facie case.

---

[2] The caption of that case is *In re Fentanyl/Hydromorphone Diversion Litigation* (medical diversion litigation), and it includes fifteen different civil case numbers.

Twelve months later, the district court denied the motion to dismiss, finding that, when taking the allegations in the petition as true, Boyd had "pled claims outside the scope of section 147.140." It found that if Boyd received saline or diluted pain medications instead of the medication he was prescribed, the "lack of care is so obvious as to be within the comprehension of a layperson," which "require[d] only common knowledge and experience to understand." So expert witness testimony was unnecessary. As a second point, the court found that Boyd's allegations included ordinary negligence claims on the hiring, retention, and supervision of "non-professional staff." So it denied the motion to dismiss for Boyd's failure to file a certificate of merit affidavit. The court ruled on that motion twenty-one months after Boyd's statutory filing deadline for the certificate of merit affidavit.

Meanwhile, the parties exchanged discovery and took depositions. Another year passed before IMMC filed two motions for summary judgment. The first reasserted Boyd's failure to file the certificate of merit and added Boyd's failure to designate expert witnesses, under Iowa Code section 668.11. The second asserted Boyd could not establish it was more likely than not that he received a defective dose of pain medication or that it caused him a permanent injury. Because Boyd could not make a prima facie showing of causation, a necessary element of negligence, IMMC contended it was entitled to summary judgment.

In resisting summary judgment, Boyd asserted that collateral estoppel barred IMMC from raising the lack of a certificate of merit affidavit because the court in the medical diversion litigation found expert testimony was unnecessary.

The district court granted IMMC's motions, finding collateral estoppel did not bar IMMC from seeking dismissal based on the lack of the certificate of merit affidavit. In relevant part, the court found that Boyd had two claims—(1) negligent hiring and supervision and (2) negligent care and treatment—both of which required expert medical testimony to prove causation and damages. Accordingly, Boyd should have filed a certificate of merit affidavit and expert witness designations; his failure to do so required dismissal of his claims. The court also noted: "Boyd has brought forth no evidence to show that it is more likely than not he received any tampered doses. IMMC's experts indicate it is unlikely, and Boyd's only testimony was that his pain increased sometime after August 25th."

Boyd appeals.

## II. Scope and Standard of Review

We review the grant of summary judgment for correction of legal error. *Rieder v. Segal*, 959 N.W.2d 423, 425–26 (Iowa 2021). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). We view the summary judgment record in the "light most favorable to the nonmoving party." *Rieder*, 959 N.W.2d at 426 (citation omitted). As the nonmoving party, Boyd is "entitled to every legitimate inference that we may draw from the record." *Degeneffe v. Home Pride Contractors, Inc.*, 16 N.W.3d 501, 505 (Iowa 2025) (citation omitted).

## III.    Discussion

Boyd first challenges the district court's conclusion that he was required to file a certificate of merit affidavit and reasserts his collateral estoppel claim.  But we choose to bypass those issues and instead consider the basic question whether Boyd generated a genuine issue of material fact that Van Cleave's actions caused his alleged injury—a necessity for both his claims to move forward.

Causation is a common element of both medical negligence and negligent hiring, supervision, and retention.[3]  If the summary judgment record lacks evidence supporting a jury question on causation, IMMC was entitled to judgment as a matter of law.  *See Uhler v. Graham Grp., Inc.*, 992 N.W.2d 577, 584 (Iowa 2023).  Boyd "may not rest upon the mere allegations or denials" in his pleadings.  *See* Iowa R. Civ. P. 1.981(5).  "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925

---

[3] To establish medical negligence, the patient must prove by a preponderance of the evidence
> (1) an applicable standard of care,
> (2) a violation of this standard, and
> (3) a causal relationship between the violation and injury sustained.

*Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 401 (Iowa 2017).  And to establish negligent hiring, supervision, and retention, the patient must show:
> (1) that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;
> (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and
> (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708–09 (Iowa 1999).

N.W.2d 793, 808 (Iowa 2019) (cleaned up). "The resistance must set forth specific facts which constitute competent evidence showing a prima facie claim." *Id.* (emphasis and citation omitted). "A genuine issue of material fact exists when reasonable minds can differ as to how a factual question should be resolved." *Andersen v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018) (citation omitted).

As the district court found, the evidence that Boyd received one of the tampered doses is sparse. IMMC tracked Boyd's medication administrations and identified two doses of hydromorphone that came from a machine that Van Cleave accessed, coinciding with a "null transaction" notation. That bin contained ten total vials. Boyd's doses were administered on August 28 and 29. A professor of statistics studied the reports detailing Van Cleave's activities on the Omnicell machines and determined that the likelihood that Boyd received tampered vials was 10.8% for the first identified vial and 31.5% for the second.

Boyd testified about the timing of those doses. He said that on August 21, providers implanted a device to drain fluid from his abdomen infection, and he felt his pain was well-controlled. But from August 23 to August 29, he felt his pain was not well-controlled. He testified he didn't know then that the medication could be at fault; he just thought his injuries were getting worse. And he perceived that medical providers did not believe him. Boyd urges us to view this evidence in the light most favorable to his claims and accept the inference that his self-reports of pain increasing—coinciding with Van Cleave's tenure—shows that he received the defective doses and suffered injury. He argues the jury could combine the statistical probabilities with his testimony to reach a more than fifty percent chance that defective doses caused his injury.

But—for several reasons—that link is too tenuous, even when we view the evidence in the best light for his case. First, other evidence in the record muddies the causal connection. The medical records show Boyd refused to allow the nurses to change the dressings on his wounds on August 28 and 29—dates he reported increased pain. Then, on August 29, Boyd complained that he wasn't given the correct medication for pain before the drain dressing was changed, which he believed was deliberate and in retaliation for an argument he had with his treating physician.

Second, Boyd's ongoing pain reports fail to align with the inference that he received tampered doses on August 28 and 29. On August 30, he transferred to a rehabilitation unit outside the hospital but continued to struggle with pain control until he was discharged on September 6. During that period, there was no chance that he received a diluted dose. That timing undermines the legitimacy of any inference that a jury could make from the overlap of Boyd's stay in the hospital with Van Cleave's employment.

Third, even if Boyd could show by a preponderance of the evidence that he received tampered vials, the summary judgment record lacks proof that those diluted doses caused his increased pain. IMMC's medical experts highlighted a complex set of interactions affecting his treatment. A board-certified anesthesiologist and pain management specialist reviewed Boyd's medical records. In a letter, the expert explained that pain-relief response to hydromorphone depends on many factors including the dose, "the emotional state of the patient, the addition of [other] non-opioid pain medications, and the use of non-medication pain treatments such as reassurance, massage, heat, and ice."

Regarding hydromorphone, he wrote, "The goal is generally not to eliminate pain entirely but to reduce pain to tolerable levels." The expert noted that Boyd also received acetaminophen, gabapentin, oxycodone, and benzodiazepines. And his review showed nurses "attentively monitored" Boyd's pain complaints and responded with various treatments. The expert saw no compelling evidence that Boyd received tampered or diluted medications. In his view, the pain Boyd experienced would be expected under the circumstances. Finally, he believed the non-opioid pain medications could be sufficient pain control by themselves.

IMMC also offered evidence from an internal medicine doctor who reported that Boyd's abscessed abdomen would have contributed to his pain. Plus, oral opioids were being administered alongside the intravenous medications, so in this expert's opinion, any medication diversion was unlikely to contribute to a change in Boyd's pain reports on August 23. According to this expert, it was more likely related to "infectious complications from his trauma."

Boyd criticizes the district court for considering his other injuries, his refusal of recommended treatment, and the other pain interventions he received—suggesting it inappropriately weighed his credibility. True, "[w]hether a plaintiff has proved causation is generally a jury question." *Uhler*, 992 N.W.2d at 584. But our supreme court cautions that "a jury should not be asked to speculate on the issue of causation" where "the analytical gap between the evidence presented and the inferences to be drawn is too wide." *Id.* (citation omitted). This is such a case.

Neither Boyd's testimony nor any other evidence in the record can establish a prima facie case that Van Cleave's conduct or IMMC's employment practices caused an injury. What's more, IMMC's medical evidence is unchallenged. A

reasonable factfinder could not reach a conclusion on causation from the record presented. Because Boyd cannot prove that element of his claims, IMMC is entitled to summary judgment.

**AFFIRMED.**