ESTATE OF Michael HARRIS, Grace Harris and Daniel Harris, Co–Administrators, Appellants,

v.

PAPA JOHN'S PIZZA and P.J. Iowa, L.C., Appellees.

No. 03–0201.

Supreme Court of Iowa.

May 12, 2004.

Dorothy A. O'Brien of O'Brien & Greve, P.L.C., Davenport, and Jerry A. Soper of Soper Law Firm, P.C., Davenport, for appellants.

Robert D. Lambert of Bittner, Lambert & Werner, Davenport, and William J. Bush of Bush, Motto, Creen & Koury, Davenport, for appellees.

STREIT, Justice.

The facts of this case are as tragic as they are bizarre. An employee of a pizza restaurant told management his supervisor had sex with a subordinate. When his supervisor found out, he punched the employee in the chest. The employee died from the blow, a so-called "chest shot."

The employee's estate sued the pizza company, alleging retaliation and negligent supervision. The retaliation claim was premised upon the theory the employee was punished for reporting a violation of the company's sexual harassment policy.

The district court dismissed both counts on summary judgment.

Because we find the "chest shot" may constitute an adverse employment action attributable to the pizza company, we reverse the district court's dismissal of the retaliation claim. We affirm dismissal of the negligent supervision claim, however, because it is preempted by the Iowa Workers' Compensation Act.

## I. Facts and Prior Proceedings

P.J. Iowa, L.C. operates five Papa John's Pizza places in the Quad Cities area.[1] Michael Harris worked as a pizza maker and deliveryman at Papa John's Locust Street store in Davenport. In December 2000, Harris's immediate supervisor, Assistant Manager Robert Shields, had sex three times with a female subordinate. Although this activity violated company policy,[2] Shields claimed the liaison was well-publicized within the Locust Street store. He alleged his supervisor, General Manager Victor Meeks, congratulated him upon learning of his conquest.

On January 11, 2001, Harris graduated from high school. After the ceremony, Harris and a friend ordered a pizza from a Moline Papa John's. While picking up his pizza, Harris told the store's Assistant Manager, Melissa Stanley, about Shields's liaison.

What happened next is unsettled. According to Shields, the next day General Manager Meeks got off the phone with Stanley and told him Harris should be on

---

**1.** Throughout this opinion the two named defendants, P.J. Iowa, L.C. and Papa John's Pizza, are referred to collectively as "Papa John's."

**2.** One of Papa John's "nine laws of management conduct" stated

Management shall not engage in any sexual harassment or "date" anyone in his or her direct chain of command. Doing so consti-

tutes a violation. Anyone failing to report and [sic] act of harassment is also in violation.

Managers were also required to start meetings by reminding employees Papa John's did not tolerate "[u]nprofessional behavior." "Unprofessional behavior" included "[i]ntimate relations" with subordinates.

his "shit list" for reporting his indiscretions. Shields knew that if his affair was revealed to upper management, he could get in trouble.

General Manager Meeks denied he told Shields that Harris should be on his "shit list." He also claims Shields denied the affair. Meeks said he told Shields he would talk to Harris about spreading rumors. According to Papa John's Area Manager, Meeks *told Shields* to talk to Harris about it.[3]

Sometime after midnight, an angry Shields confronted Harris on the phone. Harris told Shields he could not remember if he had told Stanley about Shields's indiscretions. Shields asked Harris to come down to the store, and Harris agreed, even though he was not scheduled to work. In itself, this was not an unusual occurrence. Shields, Harris, and another employee, Nathan DeFoe, had begun "hanging out" after work.

Harris arrived at the store. Shields later recalled their encounter:

> I asked him if he remembered saying it, and he kept saying he didn't remember. Throughout the whole conversation he did say that he did remember saying it and that he asked what—because I asked him, you know, Can I ever trust you again? How can I ever trust you? He said, Well, what do I have to do to regain your trust.... That was when I asked him if he would take a chest shot.

Harris agreed to take a "chest shot," i.e., a punch.

DeFoe, who had been working with Shields that night, came over to watch. DeFoe described the scene:

> Bobby was mad at him, and Mike didn't want Bobby to be mad at him anymore, so Bobby said, you know, This is how we can resolve it, and Mike agreed.... [It wasn't punishment.] They wanted to redeem their friendship. They wanted to be friends. They didn't want some girl to ... break up a friendship.

Harris braced for impact, and Shields punched him in the chest.

Harris suffered a cardiac arrhythmia, collapsed, and died. He was only nineteen years old.

Harris's estate filed a claim for workers' compensation benefits. On February 6, 2001, Papa John's carrier, Allied Insurance, denied the claim. Allied did so because it could not "substantiate that this injury arose in and out of the course and scope of his employment."

On October 30, 2001, the Estate sued Papa John's. The suit alleged Papa John's (1) violated the Iowa and Federal Civil Rights Acts, insofar as it retaliated against Harris for reporting a violation of its sexual harassment policy; and (2) negligently supervised its employees, resulting in Harris's death. The Estate also sued Shields for battery, but this count of the petition is not before us.

Papa John's filed two motions for partial summary judgment. In the first motion, Papa John's sought dismissal of the Estate's civil rights claims, because, it maintained, the Estate could not prove retaliation. The district court agreed, and dismissed the claims. In its second motion, Papa John's argued Harris's death "arose out of and in the course of his employment," and therefore the Estate's negligent supervision claim was preempted by the Iowa Workers' Compensation Act (IWCA). The district court ruled in Papa John's favor again.

---

**3.** The Area Manager took a statement from General Manager Meeks shortly after Harris's death. In her deposition, the Area Manager stated "I was told [by Meeks] ... that [Meeks] had told [Shields] to take care of it."

The Estate appeals from these adverse summary judgment rulings. The Estate alleges the district court erred in ruling (1) it could not prove retaliation and (2) the IWCA preempts its claim for negligent supervision.

## II. Standard of Review

■■■ Appellate review of a grant of a motion for summary judgment is for errors at law. *Graber v. City of Ankeny,* 656 N.W.2d 157, 160 (Iowa 2003). Summary judgment is warranted only where there is "no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3) (2002).

> A factual issue is material only if the dispute is over facts that might affect the outcome of the suit. The burden is on the party moving for summary judgment to prove the facts are undisputed. In ruling on a summary judgment motion, the court must look at the facts in a light most favorable to the party resisting the motion. The court must also consider on behalf of the nonmoving party every legitimate inference that can be reasonably deduced from the record.

*Phillips v. Covenant Clinic,* 625 N.W.2d 714, 717–18 (Iowa 2001) (citations and internal quotations omitted).

## III. Merits

### A. Retaliation

The Estate contends Papa John's violated Harris's civil rights when Shields gave him a chest shot. The Estate characterizes the chest shot as retaliation for reporting Shields's sexual harassment of a subordinate. The district court dismissed this claim, ruling Shields's actions were not attributable to Papa John's. The Estate appealed.

Papa John's defends the district court ruling on essentially two grounds. First, Papa John's argues the Estate's retaliation claim must fail because there is no evidence it took adverse employment action against Harris. Second, Papa John's points out there is no evidence Shields sexually harassed his subordinate; where there is no sexual harassment, Papa John's claims, there can be no retaliation.

### 1. Adverse Employment Action Attributable to Papa John's

■■■ The retaliation provision of Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e–3. Similarly, the Iowa Civil Rights Act (ICRA) states:

> It shall be an unfair or discriminatory practice for . . .
>
> Any person to discriminate or retaliate against another person in any of the rights protected against discrimination by this chapter because such person has lawfully opposed any practice forbidden under this chapter, obeys the provisions of this chapter, or has filed a complaint, testified, or assisted in any proceeding under this chapter.

Iowa Code § 216.11(2) (2001). Title VII was designed to ensure equal opportunity in employment for all, regardless of sex. *Pecenka v. Fareway Stores, Inc.,* 672 N.W.2d 800, 803 (Iowa 2003) (citing *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 497–98, 27 L.Ed.2d 613, 615 (1971)). The ICRA was modeled after Title VII, and therefore we have

consistently employed federal analysis when interpreting the ICRA. *See id.* Nonetheless, the decisions of federal courts interpreting Title VII are not binding upon us in interpreting similar provisions in the ICRA. *Id.*

To establish a prima facie case of retaliation under Title VII and the ICRA, a plaintiff must show: (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Channon v. United Parcel Serv., Inc.,* 629 N.W.2d 835, 861–862 (Iowa 2001) (citing, in part, *Manning v. Metro. Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997)). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to rebut a presumption of retaliation. *See Cross v. Cleaver,* 142 F.3d 1059, 1071–72 (8th Cir.1998).

In the district court, Papa John's argued the Estate could not establish that it took adverse employment action against Harris. The district court did not conclude a "chest shot" was not an adverse employment action but held Shields's actions were not attributable to Papa John's. The court dismissed the Estate's retaliation claim.

Although the parties continue to frame the issue in this bifurcated manner, we do not. The question before us is simply whether the chest shot is not, as a matter of law, an adverse employment action attributable to Papa John's. When the facts of the case are viewed in a light most favorable to the plaintiffs and affording them all legitimate inferences, we conclude the chest shot could be construed as an adverse employment action attributable to Papa John's. *See Phillips,* 625 N.W.2d at 717–18 (setting forth standard of review for summary judgment rulings). We therefore reverse and remand for further proceedings.

It is possible a jury would view the chest shot as a private matter—nothing more than a barbaric display of youthful machismo. Yet a more sinister interpretation of the facts is readily available, and it is for this reason the district court should have denied Papa John's motion for summary judgment. Harris reported a violation of Papa John's sexual harassment policy, was summoned to his workplace by his angry supervisor, Shields, at whose hands he ended up dead hours later. Shields killed Harris after Meeks, one of Papa John's general managers with responsibility for the day-to-day operations of the Locust Street store, told him to take care of the problem. Although the chest shot violated company policy, the mere enactment of a policy will not necessarily insulate an employer from liability for the acts of its employees. *See Gentry v. Exp. Packaging Co.,* 238 F.3d 842, 847 (7th Cir. 2001). Put simply, a jury ought to decide whether Shields's actions constituted adverse employment action attributable to Papa John's.

We see no reason why punching an employee for making a report of sexual harassment cannot constitute adverse employment action. *Compare Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir.1996) (including physical abuse among actions which would support a finding of an adverse employment action), *with McDonnell v. Cisneros,* 84 F.3d 256, 259 (7th Cir.1996) (although "[s]hooting a person for filing a complaint of discrimination would be an effective method of retaliation," the fact such a claimant would have other remedies in tort is "a reason for confining the provision to retaliation that takes the form of an adverse *job* action" (emphasis added)). Harris's death, after all, did result in termination of his employment. Far lesser punishments have supported a finding of retaliation.

*See, e.g., Harris v. Richards Mfg. Co.,* 511 F.Supp. 1193, 1203 (W.D.Tenn.1981), *aff'd in part and rev'd in part,* 675 F.2d 811 (6th Cir.1982) (employee moved to isolated corner). This decision is consistent with our definition of an adverse employment action as "an action that detrimentally affects the terms, conditions, or privileges of employment." *Channon,* 629 N.W.2d at 862; *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633, 652–53 (1998) ("tangible employment action" defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with specifically different responsibilities, or a decision causing significant change in benefits"); *Farmland Foods, Inc., v. Dubuque Human Rights Comm'n,* 672 N.W.2d 733, 742 (Iowa 2003) (in racial discrimination claims, "[c]onduct which constitutes a materially adverse employment action embraces a wide variety of facts"). *But see Ellerth,* 524 U.S. at 762, 118 S.Ct. at 2269, 141 L.Ed.2d at 653 ("A tangible employment action in most cases inflicts *direct* economic harm." (Emphasis added.)); *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir.2000) (federal circuit courts of appeal are split on how broadly adverse employment action must be defined).

To summarize, summary judgment was not proper. When the facts are viewed in a light most favorable to the plaintiffs and all legitimate inferences are afforded to them, we think a jury could find the chest shot was an adverse employment action attributable to Papa John's.

### 2. Protected Activity—Reporting Sexual Harassment

Papa John's argues the Estate's retaliation claim cannot prevail because there was no evidence to show Shields's subordinate was sexually harassed. Papa John's points out she never complained—formally or otherwise—about having sex with Shields. Where there is no underlying harassment, Papa John's claims, there can be no retaliation.

▪ In the district court, however, Papa John's only argued whether Harris suffered adverse employment action; in a reply brief, Papa John's expressly permitted the court to assume Harris was engaged in protected activity. Nonetheless, Papa John's now cites *Sievers v. Iowa Mutual Insurance Co.,* 581 N.W.2d 633, 636 (Iowa 1998), for the proposition that "an Iowa appellate court can uphold a lower court ruling on any ground, whether urged in the district court or not." We expressly disavowed this practice in *DeVoss v. State,* 648 N.W.2d 56, 60–61 (Iowa 2002). We will not affirm a ruling on a ground not urged in the district court. *DeVoss,* 648 N.W.2d at 61. A party is not allowed to "sing a song to us that was not first sung in trial court." *State v. Rutledge,* 600 N.W.2d 324, 325 (Iowa 1999). We do not consider, then, whether Harris engaged in protected activity, and nothing in this opinion shall be construed to so hold. We simply reverse the district court's grant of summary judgment on the Estate's Title VII and ICRA retaliation claims, insofar as the chest shot may constitute an adverse employment action attributable to Papa John's.

### B. Negligent Supervision

▪ The Estate alleged Papa John's negligently supervised Shields. Papa John's filed a second partial motion for summary judgment. The court ruled the exclusivity provision of the IWCA preempted the Estate's claim and dismissed. Because we find the Estate's injuries arose out of and in the course of employment, we likewise hold the exclusivity provision of the IWCA bars recovery.

In *Godar v. Edwards,* we recognized a cause of action for negligent supervision. 588 N.W.2d 701, 709 (Iowa 1999). We did not, however, set forth the elements of negligent supervision in that case. *See id.*; *Stricker v. Cessford Constr. Co.,* 179 F.Supp.2d 987, 1019 (N.D.Iowa 2001).

 In order to prove negligent supervision, a plaintiff must show:

(1) the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time the employee engaged in wrongful or tortious conduct;

(2) through the negligent ... supervision of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused injuries to the plaintiff; and

(3) there is some employment or agency relationship between the employee and the defendant employer.

*Stricker,* 179 F.Supp.2d at 1019 (citing *Godar,* 588 N.W.2d at 708–09); *cf. Godar,* 588 N.W.2d at 708–09 (quoting 27 Am. Jur. 2d *Employment Relationship* § 473, at 913–14 (1996)) (setting forth corresponding three elements of negligent hiring claim).

In *Graves v. Iowa Lakes Community College,* a plaintiff sought to recover under a negligent supervision theory. 639 N.W.2d 22, 25 (Iowa 2002). Unlike *Godar,* however, in *Graves* the plaintiff was also an employee of the defendant. *Id.* We recognized there was some support in other jurisdictions to extend the theory of negligent supervision to fellow employees. *Id.* This support, however, was limited to cases in which the fellow employee suffered a physical injury. *Id.* (citing *Bruchas v. Preventive Care, Inc.,* 553 N.W.2d 440, 442 (Minn.Ct.App.1996); *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.,* 967 F.Supp. 1148, 1157 (D.Minn.1997); *Sibley v. Kaiser Found. Health Plan,* 998 S.W.2d 399, 403–04 (Tex.Ct.App.1999)).

Because the plaintiff in *Graves* did not suffer a physical injury, we did not "decide whether a negligent supervision claim is available to a fellow employee." *Id.* The Estate contends our language in *Graves* constitutes a "favorable comment" upon the possibility of extending the tort to cover fellow employees in a case like the one at bar, wherein the fellow employee suffered a physical injury.

We disagree with this characterization of *Graves.* We did not comment favorably upon the fact other courts had extended the tort; we simply recognized three other courts had so extended it. In any event, *Graves* is distinguishable because there we did not decide whether, if the tort of negligent supervision were to cover fellow employees, the exclusivity provision of the IWCA would bar a common law recovery. The exclusivity provision of the IWCA provides as follows:

> The rights and remedies provided in this chapter ... for an employee ... on account of injury ... for which benefits under this chapter ... are recoverable, shall be the exclusive and only rights and remedies of the employee ... at common law or otherwise, on account of such injury ... [a]gainst the employee's employer.

Iowa Code § 85.20. Benefits are recoverable "for any and all personal injuries sustained by an employee *arising out of and in the course of employment,* and in such cases, the employer shall be relieved from other liability ... for such personal injury." *Id.* § 85.3(1) (emphasis added).

 An injury "arises out of and in the course of employment" when "there is a causal connection between the employment and the injury" and "the injury and the employment coincide as to time, place, and circumstances." *Thayer v. State,* 653 N.W.2d 595, 599–600 (Iowa 2002) (injuries

occurring riding to work in van driven by coworker as part of company controlled van-pool program sustained "out of and in the course of employment"). The district court reasoned Harris's injury was sustained "out of and in the course of employment" because (1) it occurred at his place of employment; (2) he was summoned by his manager to discuss a work-related issue; and (3) Shields was working at the time of the incident. For these same reasons, we agree with the ruling of the district court. In the present case, there is sufficient undisputed evidence to conclude Harris sustained his injury "out of and in the course of employment" to invoke the exclusivity provision of the statute.

We see no reason to carve out an exception to the general rule of preemption in this case. *See* 15 James R. Lawyer & Judith Ann Graves Higgs, Iowa Practice: Workers' Compensation § 8–2, at 81 (2004) ("The employer enjoys almost total immunity from common law liability for injuries to an employee who is entitled to workers' compensation benefits." (footnote omitted)). *Nelson v. Winnebago Industries, Inc.*, 619 N.W.2d 385 (Iowa 2000), is instructive. In *Nelson*, an employee claimed he was injured during a going-away party thrown for him at work. 619 N.W.2d at 386. His coworkers bound him with duct tape and carried him to a shower. *Id.* In the process, they dropped him. *Id.* The plaintiff sued his employer under two common law theories, false imprisonment and battery. *Id.* at 387. The employer claimed the exclusivity provision of the IWCA immunized it from common law claims. *Id.*

We ruled the sole remedy for the employee was in workers' compensation. *Id.* In pertinent part, we stated:

> We have found no case allowing a common-law suit against an employer for the acts of a supervising employee such

as in this case. In fact, the general rule is that such suits are not permitted. When the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer. . . .

> . . . . Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system.

*Id.* at 387–88 (citations and internal quotation omitted). In this case, there is an insufficient showing in the record that the *Nelson* standard has been satisfied. *See* 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.07 (2003) ("A corporation's negligent failure to prevent an assault on the plaintiff employee is clearly within the boundaries of the workers' compensation act, and therefore cannot form the basis for a suit in tort. In the same vein, actions for negligent hiring, negligent supervision, or negligent retention are barred by the exclusivity provision.").

The Estate claims *Nelson* creates a tension with *Wilson v. IBP, Inc.*, 558 N.W.2d 132 (Iowa 1996), in which we held the district court properly exercised subject matter jurisdiction over a plaintiff's slander and breach of fiduciary duty claims. In *Wilson*, we held that

> where no adequate remedy is provided by the [IWCA], then an injured worker's claim falls outside of the exclusivity pro-

vision. [The plaintiff's] claims for breach of fiduciary duty and defamation, as intentional torts, fall outside the scope of the remedies available under the [IWCA].

*Wilson*, 558 N.W.2d at 137. *Wilson*, however, is clearly distinguishable; in that case, the tort claims were based upon the employer's actions as a (self-insured) insurance company, and were, therefore, *"independent of [the plaintiff's] initial physical injury." Id.* (emphasis added). *Wilson* is thus inapplicable to the case at bar.

The Estate complains that the present statutory scheme, so interpreted, fails to provide an adequate remedy for Harris's injuries. In addition to potential claims against Shields, however, relief was available in workers' compensation from Papa John's.

The Estate also maintains we should not ignore a "contradiction" in Papa John's position: namely, that on the one hand Papa John's argues workers' compensation is the Estate's exclusive remedy because Harris's injuries arose out of and in the course of employment, but on the other denying the same to avoid a claim therein. The Estate points to a letter from Allied Insurance, Papa John's carrier, which denied the Estate's workers' compensation claim. Allied did so because it could not "substantiate that this injury arose in and out of the course and scope of his employment."

Unfortunately, the record of the Estate's workers' compensation case is not before us. In its letter, Allied indicated it was willing to reconsider its decision if additional information were submitted, and pointed out review of its decision was available with the Division of Workers' Compensation. We do not know what, if any, evidence the Estate presented to Allied, nor are we certain of the outcome of any proceedings. *See Wilson v. Liberty Mut. Group,* 666 N.W.2d 163, 166 (Iowa 2003) (judicial estoppel doctrine requires proof party "successfully and unequivocally" asserted inconsistent position in a prior legal proceeding). For these reasons, the Estate's "contradiction" argument fails to persuade us to allow the negligent supervision claim to proceed.

The Estate makes several other alternative arguments, including Harris's premises liability claim, which is based upon an argument Harris was an invitee of Papa John's. We have duly considered these claims, and reject them as insufficiently preserved, waived, or lacking merit.

## IV. Conclusion

We find the "chest shot" may constitute an adverse employment action attributable to Papa John's, and therefore reverse the district court's grant of summary judgment on the civil rights claims and remand for further proceedings. We affirm, however, the district court's ruling that the Iowa Workers' Compensation Act preempts the Estate's negligent supervision claim. As a consequence, the Estate's negligent supervision claim against Papa John's may not proceed. Summary judgment on that issue was proper.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**