# IN THE SUPREME COURT OF IOWA

No. 22–0918

Submitted March 22, 2023—Filed June 16, 2023

**JENA McCOY,**

 Appellee,

vs.

**THOMAS L. CARDELLA & ASSOCIATES,**

 Appellant.

---

Appeal from the Iowa District Court for Linn County, Valerie L. Clay, Judge.

The defendant appeals a jury verdict on the plaintiff's common law tort action as preempted by the Iowa Civil Rights Act and the Iowa Workers' Compensation Act. **REVERSED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Vernon P. Squires (argued) of Bradley & Riley PC, for appellant.

Marc A. Humphrey (argued) of Humphrey Law Firm, P.C., Des Moines, for appellee.

**OXLEY, Justice.**

Jena McCoy worked just three months at the new Thomas L. Cardella & Associates (Cardella) call center in Ottumwa before quitting when she couldn't get her team leader to stop making unwanted sexual advances. Two years later, she sued Cardella. She missed the deadline for bringing a hostile-work-environment claim under the Iowa Civil Rights Act (ICRA), Iowa Code ch. 216 (2019), so she framed her petition as one for common law negligent supervision or retention. To avoid Cardella's pretrial legal challenges that her common law claim was preempted by either the ICRA or the Iowa Workers' Compensation Act (IWCA), Iowa Code ch. 85,[1] McCoy shifted, and reshifted, her theory of liability and related damages, adopting and eschewing aspects from both the ICRA variant of her claim and the IWCA variant as necessary to form a claim that is neither quite one nor the other. Successfully avoiding pretrial dismissal, McCoy presented her claim to the jury seeking emotional distress damages related to her mental health diagnoses as a negligent supervision claim against Cardella premised on failing to protect her from assault and battery in the workplace. The jury awarded her $400,000 in emotional distress damages.

---

[1]The parties, and this court's opinions, have used the term "preemption" synonymously with the exclusivity principle in the ICRA and IWCA, Iowa Code § 216.16; *id.* § 85.20. *See, e.g.*, *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 681–82 (Iowa 2004). "Preemption" has an independent legal significance, "traditionally referr[ing] to situations in which federal law displaces state law, or the law of one level of government displaces the law of another." *Thomas v. St. Luke's Health Sys., Inc.*, 869 F. Supp. 1413, 1438 n.6 (N.D. Iowa 1994). With this understanding, this opinion will use "preemption" as a shorthand for describing the exclusive nature of the ICRA and IWCA remedy provisions.

We acknowledge the jury's conclusion that McCoy was harmed by her experience at Cardella. But she cannot avoid the statutory processes for seeking redress against her employer by manipulating common law theories to reach the jury. As presented to the jury, the claim was barred by the IWCA. We therefore reverse the district court's denial of Cardella's motion for judgment notwithstanding the verdict.

### I. Factual Background.

Cardella, headquartered in Cedar Rapids, opened a new call center in Ottumwa in January 2017. Mark Grego served as the on-site director of the Ottumwa office, and Samantha Teague was the recruiter. McCoy was hired as part of the first class of sales representatives at the new center. As a sales representative, McCoy made phone calls to sell Spectrum phone, internet, and cable services. John Thompson was hired as a team leader to supervise a group of sales representatives. McCoy, who was twenty-four years old, was placed on Thompson's team. Thompson, who was nearly twenty years older than McCoy and recently divorced, took an apparent liking to McCoy.

As a supervisor, Thompson spent most of his time walking between the representatives' cubicles, stopping to help as needed. He intentionally placed McCoy's cubicle within three feet of his desk, which made her feel uncomfortable. According to McCoy, after her first few weeks of work, Thompson began sitting next to her in her cubicle, touching her inappropriately and making sexually charged comments. On at least one occasion, Thompson walked up behind McCoy and kissed the top of her head, apparently in full view of Grego's office.

On another occasion, Thompson brought McCoy a teddy bear and flowers and left them in her cubicle. McCoy had her mother come to the office, pick up the flowers and teddy bear, and throw them away. On several occasions, Thompson reached around McCoy, apparently to give her a "side hug," and brushed his arm across her breasts. When McCoy told Thompson that behavior made her uncomfortable, he "laugh[ed] it off." McCoy testified that she never encouraged this inappropriate conduct from Thompson and told him "No" whenever he touched her or made sexual comments. Thompson's inappropriate behavior continued after he began training McCoy to become a supervisor. Thompson often asked McCoy—but not his other trainees—to stay late for training, where he continued the inappropriate conduct. This unwanted contact occurred on at least twenty occasions over the three months McCoy worked at Cardella. According to Bonnie Sullivan, another sales representative, it was common knowledge that Thompson was obsessed with McCoy.

Thompson's version of the facts differs significantly. According to Thompson, McCoy asked for his phone number and asked him out. Although he admits to touching McCoy in the workplace, Thompson claims that he and McCoy were building toward a relationship until he found out she had a boyfriend. Thompson asserts that McCoy came on to him with sexual notes and touching and that she never told him to stop.

McCoy reported Thompson's inappropriate conduct to Teague in early March, a couple of weeks after the unwanted touching started. Despite McCoy's

report, Thompson remained her supervisor, and the conduct continued. McCoy continued to reject Thompson's advances.

Mitch Turner, another team leader, also made inappropriate sexual comments to McCoy (and other female employees) on several occasions. According to McCoy, Turner generally made these comments in the locker room at the end of McCoy's shift, where he would put his arm up against her locker so that she felt trapped between his arm and her open locker door. McCoy often got off work after dark, and she felt unsafe walking to her car because she was afraid that Turner would act on his sexual innuendos.

McCoy again reported Thompson's inappropriate touching and sexual comments to Teague toward the end of April. This time she took Sullivan with her and also reported Turner's inappropriate comments. Teague had McCoy tell her story to Grego, but the only solution they offered was to switch McCoy to Turner's team. McCoy made it clear that she could not continue working at Cardella if no other solution were offered. McCoy quit working at Cardella on April 25, 2017. Teague and Grego denied that McCoy ever reported inappropriate behavior by either Thompson or Turner and contended that McCoy quit after she was a "no call no show" for three consecutive days.

**II. Procedural History.**

On May 8, 2019, McCoy filed this lawsuit against Cardella, asserting a single claim of negligent hiring, supervision, and retention of Thompson and Turner. McCoy alleged she had been constructively discharged, prompted by "the creation of a hostile and unhealthy sexually charged work environment . . . by

her trainer and supervisor John Thompson, and also by Mitch Turner." McCoy alleged that Cardella was liable for not protecting her from the inappropriate sexual conduct after she complained to Cardella supervisors, seeking damages in the form of lost wages and benefits, emotional distress and mental anguish, and harm to her reputation. Cardella moved to dismiss McCoy's petition, arguing that her claim was really a sexual harassment hostile-work-environment claim and was preempted by the ICRA. Cardella also noted that McCoy could not state a claim under the ICRA because she had missed the 300-day window for filing an ICRA charge with the Iowa Civil Rights Commission. *See* Iowa Code § 216.15(13). Although not couched as such in her petition, McCoy clarified in her resistance to the motion to dismiss that her negligence claim was premised on Cardella's failure to protect her from conduct amounting to assault and battery and not necessarily hostile-work-environment discrimination. Relying on *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38–39 (Iowa 1993), where we reversed the dismissal of assault and battery claims at the motion to dismiss stage because the ICRA did not necessarily preempt the claims to the extent they were not bound up in a discrimination complaint, the district court denied the motion to dismiss, concluding that McCoy's petition gave Cardella fair notice that her negligence claim was premised on Thompson's and Turner's assaultive behavior.

On January 6, 2020, Cardella filed a motion for summary judgment, reprising its ICRA preemption argument and adding a new argument: that McCoy's claim for negligent hiring, supervision, and retention premised on a

workplace assault and battery is separately barred by the exclusivity provision of the IWCA. *See* Iowa Code § 85.20. McCoy did not file a timely workers' compensation claim with her employer, and Cardella argued she could not circumvent that process through the common law claim. A different district court judge denied Cardella's motion for summary judgment. The court relied on the prior ruling denying Cardella's motion to dismiss to reject Cardella's ICRA preemption argument. It distinguished our case of *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673 (Iowa 2004), where we held that the IWCA precluded a negligent hiring and supervision claim against the plaintiff's employer because it provides the exclusive remedy for injuries to an employee who was assaulted by his supervisor, to reject Cardella's IWCA preemption argument.

McCoy's September 21 trial was continued due to the COVID-19 pandemic, and the case finally went to trial on February 8, 2022. The jury was asked to answer five special interrogatories: whether Turner committed an assault; whether Thompson committed an assault; whether Thompson committed a battery; whether Cardella was negligent in hiring, supervising, or retaining Turner; and whether Cardella was negligent in hiring, supervising, or retaining Thompson. The jury found: that Turner *did not* commit assault; that Thompson committed both assault and battery; and that Cardella was negligent in hiring, supervising, or retaining both Thompson and Turner. The jury awarded McCoy $400,000 for past and future emotional distress damages—the only type of damages presented to the jury. Cardella reasserted its ICRA and IWCA preemption arguments by motion for directed verdict before the case was

submitted to the jury and by motion for judgment notwithstanding the verdict and for a new trial. The district court declined to revisit those issues and denied Cardella's motions.

Cardella appeals, arguing McCoy's claims are preempted by the ICRA and the IWCA and raising a number of trial challenges. We retained the appeal.

**III. Analysis.**

Our review is of the district court's denial of Cardella's posttrial motion for judgment notwithstanding the jury verdict and for a new trial, which we review to correct legal error. *Luigi's, Inc. v. United Fire & Cas. Co.*, 959 N.W.2d 401, 406 (Iowa 2021); *see also Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (noting that the denial of pretrial motions "merges with the trial on the merits where the trier of fact reviewed the exhibits and listened to the testimony of the witnesses"), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). McCoy's negligent supervision claim was tried to the jury premised on Cardella's failure to protect her from assault and battery in the workplace, implicating the IWCA.

As explained below, we hold that the district court erred in concluding that McCoy's claim was not preempted by the IWCA. Because we reverse the district court's ruling on Cardella's motion for judgment notwithstanding the verdict on this basis, we do not address ICRA preemption or any of Cardella's trial-related challenges. We start our analysis with an overview of the common law tort of negligent supervision and the relevant provisions of the IWCA.

**A. Common Law Negligent Hiring, Supervision, and Retention.** An employer can be liable for the tortious actions of its employees under a common law theory of negligent hiring, supervision, or retention when its employee injures a third party. *See Godar v. Edwards*, 588 N.W.2d 701, 708–10 (Iowa 1999) (adopting tort of negligent hiring as recognized in other jurisdictions and extending the reasoning to negligent retention and negligent supervision claims). The claim is premised on agency principles and imposes on an employer the "duty to exercise reasonable care in hiring[, supervising, or retaining] individuals, who, because of their employment, may pose a threat of injury to members of the public." *Id.* at 708–09 (applying Restatement (Second) of Agency § 213, at 458 (Am. L. Inst. 1958) [hereinafter Restatement (Second)], and 27 Am. Jur. 2d *Employment Relationship* § 473, at 913–14 (1996)). Negligent supervision is only actionable when "the conduct that proper supervision . . . would have avoided is . . . actionable against the employee." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999) ("[T]he torts of negligent hiring, supervision, or training 'must include as an element an underlying tort or wrongful act committed by the employee.' " (quoting *Haverly v. Kaytec, Inc.*, 738 A.2d 86, 91 (Vt. 1999))).

We have never affirmatively recognized a viable negligent supervision claim in favor of a plaintiff suing her own employer based on the wrongful conduct of a coemployee. In *Graves v. Iowa Lakes Community College*, we declined to follow cases from other jurisdictions that had recognized such claims where the coworker caused a physical injury, unlike the issue in *Graves*, which involved a

claim of negligent supervision premised on fabricated performance reviews by the plaintiff's supervisor that allegedly resulted in the wrongful termination of the plaintiff. 639 N.W.2d 22, 25 (Iowa 2002) ("Because Graves does not assert any physical injury it is unnecessary for us to decide whether a negligent supervision claim is available to a fellow employee."), *overruled by Kiesau*, 686 N.W.2d 164. While we later clarified in *Kiesau v. Bantz* that there is no physical-injury predicate for negligent supervision claims generally, *see* 686 N.W.2d at 172–73 (concluding that a physical-injury requirement was contrary to Restatement (Second) section 213, upon which the tort was premised and led to absurd distinctions); that case involved a claim by a former employee premised on events that postdated her employment, *see id.* (addressing negligent supervision claim premised on defamation and invasion of privacy allegations against a former coemployee who distributed digitally-altered photos of the plaintiff after she had quit for unrelated reasons). Focused on the challenge to the physical-injury requirement, we held only that the plaintiff made out a viable negligent supervision or retention claim against her former employer regardless of whether she sought physical-injury damages. *Id.* at 173–74. But we did not address the impact, if any, of the plaintiff's status as a former employee on her negligent supervision or retention claims. *See id.*

We more expressly avoided the issue of whether negligent supervision extends to coemployees in *Harris*, where we held that any such claim was preempted by the IWCA in any event. *See* 679 N.W.2d at 679–82 ("We did not comment favorably [in *Graves*] upon the fact other courts had extended the tort;

we simply recognized three other courts had so extended it. In any event, *Graves* is distinguishable because there we did not decide whether, if the tort of negligent supervision were to cover fellow employees, the exclusivity provision of the IWCA would bar a common law recovery."). Although some federal courts have recognized a negligent supervision claim under Iowa law in the coworker setting, *see, e.g.*, *Stricker v. Cessford Constr. Co.*, 179 F. Supp. 2d 987, 1017–19 (N.D. Iowa 2001) (denying defendant's motion for summary judgment on plaintiff's negligent supervision and retention claims, brought together with Federal Title VII and ICRA claims, against plaintiff's employer premised on allegations that plaintiff's coworker engaged in sexual behavior amounting to assault and battery), others have avoided the issue by finding the claim preempted, similar to what we did in *Harris*, *see, e.g.*, *Graham v. Drake Univ.*, No. 4:16–cv–00648, 2018 WL 11417566, at *5 (S.D. Iowa Feb. 21, 2018) (dismissing negligent supervision or retention claim as precluded by the ICRA where "[a]ll of the wrongful acts that Graham alleges are discrimination, harassment, and retaliation relating to Graham's sexual orientation and ADHD disability").

**B. Iowa Workers' Compensation Act Liability.** The IWCA provides statutory compensation for employees injured in the workplace. The workers' compensation "system provides mutual benefits and tradeoffs for workers and employers. Workers relinquish their right to sue the employer for damages on the condition that the employer promptly compensates workers for injuries that arise out of and in the course of employment regardless of fault." *Tripp v. Scott*

*Emergency Commc'n Ctr.*, 977 N.W.2d 459, 464 (Iowa 2022) (citation omitted).

That trade-off is reflected in Iowa Code section 85.3(1), which provides:

> Every employer . . . shall provide, secure, and pay compensation . . . for any and all personal injuries sustained by an employee arising out of and in the course of the employment, and in such cases, the employer shall be relieved from other liability for recovery of damages or other compensation for such personal injury.

Benefits recoverable under the IWCA provide the employee's exclusive remedy against her employer for workplace injuries:

> The rights and remedies provided in this chapter . . . for an employee . . . on account of injury . . . for which benefits under this chapter . . . are recoverable, shall be the exclusive and only rights and remedies of the employee[,] . . . at common law or otherwise, on account of such injury . . . [a]gainst the employee's employer.

Iowa Code § 85.20. When an employee is injured by the tortious acts of another employee at work, the workers' compensation exclusivity rule precludes the injured employee from bringing a common law tort action against the employer for the resulting injuries, even when the coemployee's conduct is intentional. *See Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 387 (Iowa 2000) (en banc) (describing the "general rule" that an employer is not liable at common law for the intentional torts of its supervisory employees causing injury to another employee unless the supervisor is "the employer in person [or] a person who is realistically the alter ego of the corporation" (quoting 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 68.21(a), at 13–133 (1994) [hereinafter Larson, *Law of Workmen's Compensation*])). To the employer, an intentional tort by one employee against another "is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered

by the compensation system." *Id.* at 387–88 (quoting 2A Larson, *Law of Workmen's Compensation* § 68.21(b), at 13–123).

This exclusivity rule applies to claims for negligent supervision or retention by the employer. In *Harris*, we saw "no reason to carve out an exception to the general rule of preemption" for a negligent supervision claim premised on failing to protect an employee when his supervisor gave him a "chest shot"[2] after the employee informed a coemployee that the supervisor was sleeping with a subordinate, which was against company policy. 679 N.W.2d at 681–82. "A corporation's negligent failure to prevent an assault on the plaintiff employee is clearly within the boundaries of the workers' compensation act, and therefore cannot form the basis for a suit in tort. In the same vein, actions for negligent hiring, negligent supervision, or negligent retention are barred by the exclusivity provision." *Id.* at 681 (quoting 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.07 (2003)).

An employee's injury "arises out of and in the course of employment," as is required by section 85.3(1) for the injury to be covered by workers' compensation, if " 'there is a causal connection between the employment and the injury' and 'the injury and the employment coincide[d] as to time, place, and circumstances.' " *Id.* at 680 (quoting *Thayer v. State*, 653 N.W.2d 595, 599–600 (Iowa 2002)). In *Harris*, it was enough to meet this test where the incident

---

[2]The employee apparently agreed to take a "chest shot," or a punch to the chest, as a way to regain his supervisor's trust and redeem their friendship after the supervisor confronted him about telling an assistant manager about the supervisor's indiscretions. *Harris*, 679 N.W.2d at 675–76. The employee "braced for impact, [the supervisor] punched him in the chest," and the employee "suffered a cardiac arrhythmia, collapsed, and died." *Id.* at 676.

occurred at Harris's workplace, his manager summoned him to discuss a work-related issue, and the manager was working at the time he gave Harris the chest shot. *Id.* at 681.

**C. Application to This Case.** With this background, we turn to Cardella's argument that McCoy's common law claim is preempted by the IWCA. Under the *Harris* test, McCoy's injuries arose out of and in the course of her employment with Cardella. *See id.* at 680–81. The assault and battery occurred at her workplace, perpetrated by her team leader throughout the workday. Still, the IWCA exclusivity provision does not preclude a common law claim if the claimed "injuries fall outside the workers' compensation law." *Nelson*, 619 N.W.2d at 388. That determination turns on the plaintiff's claimed damages, not the framing of her tort. In *Nelson v. Winnebago Industries, Inc.*, an employee was injured after a going away party when his coworkers duct-taped him to a chair, picked him up, and then dropped him while carrying him to a shower. *Id.* at 386. He subsequently sued his employer, asserting common law claims of false imprisonment and battery. *Id.* at 387. While both torts could be committed without a physical injury that would be compensable under workers' compensation, "that [wa]s not the gist of his suit." *Id.* at 389. Regardless of how he framed his claims, we looked to the plaintiff's claimed damages to determine whether the common law claims were subject to the IWCA exclusivity provisions. *Id.* (noting the plaintiff sought damages for "serious and permanent personal injuries, mental pain, and mental distress"). We adopted the following distinction recognized by Professor Larson:

> [I]f the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, *including in "physical" the kinds of mental or nervous injury that cause disability*, the action should be barred even if it can be cast in the form of a normally non-physical tort.

*Id.* (quoting 2A Larson, *Law of Workmen's Compensation* § 68.34(a), at 13–180).

On appeal, McCoy essentially asks us to adopt the reasoning of the district court's summary judgment ruling, where the court concluded that IWCA preemption did not apply because McCoy was not claiming that Cardella had a duty to prevent the assaults but had a duty to respond to her complaints. This brings us back to the problem with McCoy's shifting positions throughout the course of the litigation. "After a trial on the merits, a court's decision to deny a motion for summary judgment merges with the trial." *Figley v. W.S. Indus.*, 801 N.W.2d 602, 607 & n.4 (Iowa Ct. App. 2011). McCoy avoided summary judgment by recharacterizing her claim as one premised not on preventing injuries caused by an assault, but on damages from Cardella's own negligent response to her complaints. Yet when McCoy's case went to trial, her claim shifted back. The jury instructions equated negligently supervising an employee who committed assault or battery with "failing to protect McCoy from the" assault or battery—the position McCoy disclaimed at summary judgment.[3]

---

[3]The jury instructions also tied damages to the assault and battery, both in instructing on negligent supervision and in instructing on the underlying assault and battery torts. Jury Instruction No. 10, the marshaling instruction for negligent hiring, supervision, or retention, included as an element that "John Thompson and/or Mitch Turner's dangerous characteristics were a cause of damage to McCoy" and that one or both of them "committed an assault or battery against McCoy, as explained in instructions Nos. 11 and 13." Each of those instructions included as elements of assault or battery, respectively, that "[t]he act caused McCoy's damage" and "[t]he amount of damage."

Not only did McCoy's theory change, so too did her claimed damages. Here again, McCoy argues only that we should follow the district court's lead when it denied summary judgment. But the damages presented to the district court on summary judgment were very different than the damages presented to the jury. In resistance to Cardella's motion for summary judgment, McCoy pointed to her damages claims for lost wages and benefits, harm to her reputation, and mental anguish—all purportedly caused by Cardella's callous response, not the underlying assault and battery. These nonphysical damages convinced the district court to reject Cardella's IWCA preemption argument on summary judgment because they were unavailable under the IWCA. *See Nelson,* 619 N.W.2d at 389 ("[I]f the essence of the tort, in law, is non-physical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred." (quoting 2A Larson, *Law of Workmen's Compensation* § 68.34(a), at 13–180)).

But the only evidence of damages submitted to the jury were those related to her mental health diagnoses. McCoy's mental health counselor, Kara Crain, testified that the events at Cardella were a cause of McCoy's diagnoses of post-traumatic stress disorder, panic disorder, and generalized anxiety and that the events also exacerbated those diagnoses along with her diagnosis of major depression. McCoy does not dispute that these mental health injuries—which formed the sole basis for the jury's $400,000 award for past and future emotional distress—are compensable under the IWCA as physical injuries. The specific events that caused these injuries were identified in McCoy's counsel's

hypothetical presented to Crain as follows: unwanted touching and inappropriate comments with a sexual overtone from her supervisor, Thompson, which occurred more than twenty times and continued despite McCoy consistently asking him to stop and twice complaining to management, as well as being subjected to inappropriate comments from another supervisor, all of which led McCoy to quit her job. Thus, the gist of McCoy's lawsuit, as tried to the jury, was recovery of mental health injuries caused by Cardella's failure to protect her from injuries caused by assault and battery in the workplace; in other words, physical injuries under the IWCA. Therefore, her common law claim is subject to the exclusivity provisions of, and barred by, the IWCA. *See id.* ("[I]f the essence of the action is recovery for physical injury . . . , including in 'physical' the kinds of mental or nervous injury that cause disability, the action should be barred even if it can be cast in the form of a normally non-physical tort." (emphasis omitted) (quoting 2A Larson, *Law of Workmen's Compensation* § 68.34(a), at 13–180)); *see also id.* ("In Iowa purely mental injuries caused by the workplace, even in the absence of a physical injury, are compensable under workers' compensation."); *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 846 (Iowa 1995) (holding that personal injuries under Iowa Code section 85.3(1) encompass pure and nontraumatic mental injuries).[4]

---

[4]McCoy's attempt to rely on *Delgado-Zuniga v. Dickey & Campbell Law Firm, P.L.C.*, No. 17–0099, 2017 WL 4050285 (Iowa Ct. App. Sept. 13, 2017), from the court of appeals proves too much. Initially, we note that *Delgado-Zuniga* does not stand for the proposition that if the facts give rise to an ICRA claim, then they cannot support an IWCA claim. Rather, the court of appeals recognized only that where the employee chose to pursue an ICRA claim and relied on the very same facts to also pursue an IWCA claim—to the point that there is only one circle in the Venn diagram of the two claims—then the employee's election of remedies under the ICRA precluded his claim for benefits under the IWCA. *See id.* at *4. We have recognized that there may be

**D. The Willful Act, or "Imported Quarrel," Bar to Workers' Compensation Benefits Under Iowa Code Section 85.16(3).** Finally, we reject McCoy's reliance on Iowa Code section 85.16(3) to argue that the IWCA does not preclude her common law claim. Section 85.16(3) bars a claim for workers' compensation benefits when the plaintiff's injury is caused by "the willful act of a third party directed against the employee for reasons personal to such employee." Iowa Code § 85.16(3). This bar does not apply, as McCoy argues, to every injury caused by the willful act of another. Rather, the focus is on the final phrase, barring compensation only for those injuries caused by willful acts directed at the injured employee "for reasons personal to such employee." *Id.*

In *Xenia Rural Water District v. Vegors*, we rejected an employer's argument that an injury stemming from alleged horseplay between coemployees brought the injury within section 85.16(3)'s exception. 786 N.W.2d 250, 257–59 (Iowa 2010). We explained that "the purpose of [section 85.16(3)] was to prohibit compensation where the injury stems from a personal dispute or animosity stemming from the injured employee's life *outside of work* that is not caused or exacerbated by the employment"—hence the "*imported*-quarrel" nickname for the

---

instances where an employee can pursue claims under both the ICRA and the IWCA. *See, e.g.*, *Baird v. Ottumwa Cmty. Sch. Dist.*, 551 N.W.2d 874, 876 (Iowa 1996) (reversing summary judgment on employee's challenge to the denial of workers' compensation benefits after she settled her ICRA claim, explaining: "It is manifest that not all circumstances that would create a compensable [IWCA] claim for emotional distress benefits under our decision in *Dunlavey v. Economy Fire & Casualty Co.*, 526 N.W.2d 845, 851 (Iowa 1995), would give rise to a sexual discrimination claim under section 601A.6."). As relevant to McCoy's reliance on *Delgado-Zuniga* in this case, her recognition that she could have filed an ICRA claim but for missing the 300-day cutoff for filing a charge reveals that her claim, as pleaded, was likely barred by the ICRA. But because her claim, as tried, was affirmatively preempted by the IWCA, we need not address that issue.

exception. *Id.* at 258–59 (emphases added) (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 8.02, at 8–43 (2009)). Because there was "no evidence in the record that [the coemployees] had any relationship outside of work other than as coworkers or that [the injurious action was prompted by] any reason imported from outside the working environment," the section 85.16(3) exception was inapplicable. *Id.* at 259.

If McCoy's claims are premised on an injury stemming from Thompson's conduct (as she asserts in arguing the section 85.16(3) exception on appeal), *Xenia*'s clear explanation shows that her claim would not be barred by section 85.16(3): McCoy only knew Thompson through her employment at Cardella, so his conduct could not have been "based on a personal relationship outside the working environment." *Id.* If McCoy's claims are premised on an injury stemming from Cardella's own negligence—either in failing to prevent the assaults (as the jury was instructed) or in failing to respond to her complaints (as the district court characterized the claim in its summary judgment ruling)—then the injury was not caused by "a third party," Iowa Code § 85.16(3), and the exception is again inapplicable, *see Knutson v. Sioux Tools, Inc.*, 990 F. Supp. 1114, 1124 n.2 (N.D. Iowa 1998) ("The court does not agree that a claim of failure to provide a safe workplace arising from an assault in the workplace . . . could fall within [section 85.16(3)'s exception]. The 'wrong' upon which the claim is based is not the 'wrong' of injury by a co-employee or third party perpetrating the assault, but the 'wrong' of the *employer* in failing to prevent the assault. Thus, only the *employer's* conduct, not that of the third party or co-employee guilty of the actual

assault, should ever be at issue on such a claim." (citations omitted)). In either case, Iowa Code section 85.16(3) does not apply.

**IV. Conclusion.**

As tried, McCoy's claim of negligent supervision for failure to protect her from Thompson's assault and battery in the workplace, resulting in emotional distress injuries, was barred by the exclusivity provisions of the Iowa Workers' Compensation Act. The district court's order denying judgment notwithstanding the verdict is reversed, and the case is remanded for entry of judgment for the defendant.

**REVERSED.**